UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KHAIRIYAH MOHAMMED ABBOOD AL SAEDI, *Plaintiff*, v. VIRAJ LEBAILLY, *et al.*, *Defendants*. | Civil Action No. 24-1401 (LLA) |

## MEMORANDUM OPINION

Plaintiff Khairiyah Mohammed Abbood Al Saedi, a citizen of Iraq residing in Turkey, seeks to compel Defendants—Viraj LeBailly, in her official capacity as Acting Deputy Chief of Mission to the U.S. Embassy in Turkey, and Marco Rubio, in his official capacity as Secretary of State—to adjudicate her immigrant visa application. ECF No. 1.[1] Ms. Al Saedi contends that her I-130 application has been unreasonably delayed in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361. ECF No. 1 ¶¶ 24-35. Defendants have moved to dismiss Ms. Al Saedi's claim under Federal Rules of Civil Procedure 12(b)(1) and (b)(6). ECF No. 5. For the reasons explained below, the court will dismiss the case under Rule 12(b)(6).

---

[1] Ms. Al Saedi named former Deputy Chief Scott M. Oudkirk and former Secretary of State Antony J. Blinken as Defendants, but the current Deputy Chief and Secretary of State are "automatically substituted" as parties pursuant to Federal Rule of Civil Procedure 25(d).

## I.  BACKGROUND

The court draws the following facts, accepted as true, from Ms. Al Saedi's complaint. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). It further takes judicial notice of "information posted on official public websites of government agencies." *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).

The Immigration and Nationality Act ("INA") provides that a U.S. citizen, U.S. national, or lawful permanent resident may petition for a qualifying relative to receive permanent residency in the United States. 8 U.S.C. § 1154. There are several steps to the process. First, the sponsor must file a Form I-130, Petition for Alien Relative with U.S. Citizenship and Immigration Services ("USCIS"). *See* 8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1); USCIS, I-130 Petition for Alien Relative.[2] If USCIS approves the petition, it transfers the case to the U.S. State Department's National Visa Center ("NVC"). 8 C.F.R. § 204.2(a)(3). The foreign national must then submit an application to the NVC and await an interview with a consular officer at the appropriate consular office. 22 C.F.R. §§ 42.61-.62. At the conclusion of the interview, "the consular officer must [either] issue [or] refuse the visa." *Id.* § 42.81(a). If the consular officer determines that he does not have sufficient information to establish visa eligibility, the officer may "refuse" the visa pending further administrative processing pursuant to Section 221(g) of the INA, which typically consists of additional information-gathering. U.S. Dep't of State, *Administrative Processing Information*;[3] *see* 8 U.S.C. § 1201(g); *Giliana v. Blinken*, 596 F. Supp. 3d 13, 18 (D.D.C. 2022).

In July 2019, Ms. Al Saedi's daughter, a U.S. citizen, filed a Form I-130 on her mother's behalf. ECF No. 1 ¶ 17. In October 2022, Ms. Al Saedi was interviewed at the U.S. Embassy in

---

[2] https://perma.cc/M4TN-T4MY.
[3] https://perma.cc/44NK-RVZE.

Turkey. *Id.* ¶ 20. After the interview, Ms. Al Saedi learned that her visa had been placed in administrative processing, where it has remained ever since. *Id.* ¶¶ 21, 23; 8 U.S.C § 1201(g). Ms. Al Saedi and her daughter have inquired numerous times about the status of Ms. Al Saedi's application, but they have received "no meaningful responses." ECF No. 1 ¶ 23. As a result, "it is unclear what steps, if any [are being taken by Defendants] to complete the adjudication of [Ms. Al Saedi's] visa application." *Id.*

The delay in the adjudication of Ms. Al Saedi's visa application has caused Ms. Al Saedi and her daughter to suffer from "significant personal, financial, and emotional hardship." *Id.* ¶ 7. Ms. Al Saedi currently lives alone—her husband is presumed to have died in the war between Iran and Iraq in 1985 and her children immigrated to the United States in 2013. *Id.* ¶ 8.[4] Ms. Al Saedi's daughter is a single mother and the primary provider and caretaker for her child and her brother, who is disabled. *Id.* ¶ 10. She also sends money to Ms. Al Saedi monthly. *Id.* Ms. Al Saedi's daughter seeks to be reunited with her mother because it would enable her to seek full-time employment and attain greater financial stability for the family. *Id.* ¶ 8.

In May 2024, Ms. Al Saedi filed a complaint seeking to compel the adjudication of her visa application. *Id.* ¶ 36. Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 5. The matter is fully briefed. ECF Nos. 5, 8, 9.

## II.   LEGAL STANDARDS

Ms. Al Saedi bears the burden of establishing subject-matter jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-61 (1992). In reviewing a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court will "assume the truth of all material

---

[4] Ms. Al Saedi variously alleges that she resides in Turkey, ECF No. 1 ¶ 11, and Iraq, *id.* ¶ 8-9.

factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss under Rule 12(b)(6), the court will accept the factual allegations in Ms. Al Saedi's complaint as true and draw all reasonable inferences in her favor. *Id.*

### III. DISCUSSION

Defendants raise myriad arguments for dismissal under Rule 12(b)(1) and (b)(6), including arguments about standing, nonreviewability, and failure to state a claim. *See generally* ECF No. 5. These arguments have been raised in scores of cases in this district, providing a wealth of persuasive authority for the court. *See, e.g.*, *Kahbasi v. Blinken*, No. 23-CV-1667, 2024 WL 3202222 (D.D.C. June 27, 2024); *Ameer v. Schofer*, No. 23-CV-03066, 2024 WL 2831464 (D.D.C. June 4, 2024); *Al-Gharawy v. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1 (D.D.C. 2022); *Shen v. Pompeo*, No. 20-CV-1263, 2021 WL 1246025 (D.D.C. Mar. 24, 2021).

#### A. Standing

The court begins, as it must, with jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998). Article III of the Constitution limits the jurisdiction of federal courts to "actual cases or controversies," meaning that Ms. Al Saedi "must establish that [she] ha[s]

4

standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).  To satisfy the constitutional requirement of standing, Ms. Al Saedi must show: "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan*, 504 U.S. at 560-61).

Here, the Secretary of State contests the redressability prong of standing.  Specifically, he argues that he cannot provide the requested relief, meaning that he should be dismissed from the suit.  ECF No. 5, at 5-7; ECF No. 9, at 1-2.  "To demonstrate standing under Article III, a party must show injury in fact that was caused by the conduct of the defendants and that can be redressed by judicial relief." *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1289 (D.C. Cir. 2007).  The Secretary correctly acknowledges that the INA "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'"  ECF No. 5, at 6 (emphasis omitted) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999).  But Ms. Al Saedi does not seek to have her visa adjudication revised; rather, she seeks to have the adjudication completed.  *See* ECF No. 1 ¶¶ 23, 33, 39.  As numerous courts in this district have acknowledged, decisions on the merits are distinct from decisions about timing.  *See, e.g.*, *Al-Gharawy*, 617 F. Supp. 3d at 10.  "[N]othing . . . precludes the Secretary [of State] . . . from directing consular officers 'to conclude . . . matter[s] presented to [them]' 'within a reasonable time.'"  *Id.*  (fifth, sixth, and seventh alterations in original) (quoting 5 U.S.C. § 555(b)).  Because the Secretary either does or could play a role in the pace of visa adjudications, an order from this court directing him to move

5

more quickly would likely redress Ms. Al Saedi's harms. *See Lujan*, 504 U.S. at 561. Accordingly, Ms. Al Saedi has satisfied the redressability prong of standing.

### B. Consular Nonreviewability and Non-Discretionary Duty

Defendants next raise two non-standing threshold challenges: (1) that the doctrine of consular nonreviewability bars Ms. Al Saedi's claims, ECF No. 5, at 7; and (2) that she fails to identify a discrete agency action that Defendants were obligated to, but did not, take, *id.* at 11. The court is unpersuaded.

First, Defendants argue that the doctrine of consular nonreviewability prevents this court from reaching the merits of the case. *Id.* at 7. In the context of visa adjudications, consular nonreviewability "shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021). "[A] long line of decisions from this Court have held that the consular nonreviewability doctrine applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision." *Al-Gharawy*, 617 F. Supp. 3d at 11. Ms. Al Saedi's application remains in administrative processing. ECF No. 1 ¶¶ 21-23. Thus, the doctrine does not apply.

Second, Defendants contend that Ms. Al Saedi has failed to meet the threshold statutory requirements to bring a mandamus claim—specifically, that there is "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists"—or a related claim of unreasonable delay under the APA. ECF No. 5, at 11-12 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016)).

Defendants argue that Ms. Al Saedi cannot identify a nondiscretionary duty to adjudicate her visa application. ECF No. 5, at 11.[5]

Several courts in this district have concluded that there is a duty to complete adjudication of visa applications, explaining "that both the APA and State Department regulations create a clear duty to adjudicate visa applications within a reasonable time." *Rashidian*, 2024 WL 1076810, at *5; *see, e.g.*, *Kahbasi*, 2024 WL 3202222, at *5, *Ameer*, 2024 WL 2831464, at *4; *Akrayi v. Dep't of State*, No. 22-CV-1289, 2023 WL 2424600, at *2 (D.D.C. Mar. 9, 2023); *Vulupala v. Barr*, 438 F. Supp. 3d 93, 100 (D.D.C. 2020). *But see Mukkavilli v. Jaddou*, No. 22-CV-2289, 2023 WL 4029344, at *7-12 (D.D.C. June 15, 2023), *aff'd on other grounds*, No. 23-5138, 2024 WL 1231346 (D.C. Cir. Mar. 22, 2024). This court agrees with the majority view. Issuing a final decision on a visa application is plainly a discrete agency action, and it is required by both the APA and federal regulations. *See Khazaei v. Blinken*, No. 23-CV-1419, 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023); *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (explaining that the APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed,' *id.* § 706(1)").[6]

---

[5] While Defendants frame their argument in terms of "re-adjudicating," ECF No. 5, at 13, as explained above, a Section 221(g) refusal is not a final adjudication of a visa application.

[6] In a Notice of Supplemental Authority filed on July 26, 2024, ECF No. 6, Defendants note a recent decision from the U.S. Court of Appeals for the D.C. Circuit, *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024), in which the Court held that the plaintiff, who sought adjudication of her visa application, had not shown a clear and indisputable right to relief or a discrete action that the federal defendant had failed to perform. *Id.* at *3. Defendants contend that *Karimova*'s "controlling holding . . . is dispositive of the claims in this case." ECF No. 6, at 1. Not so. *Karimova* is an unpublished opinion, and "a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition." D.C. Cir. R. 36(e)(2). This court has considered *Karimova* but declines to follow it.

### C.   Unreasonable Delay

On the merits, Defendants argue that Ms. Al Saedi has failed to state a claim for unreasonable delay on which relief can be granted. ECF No. 5, at 19. Ms. Al Saedi's claims under the Mandamus Act and the APA share the same standards for obtaining relief. *Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010). "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("*TRAC*")). Unreasonable delay is analyzed using the six "*TRAC*" factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Am. Hosp. Ass'n*, 812 F.3d at 189 (quoting *TRAC*, 750 F.2d at 80). While not "ironclad," the *TRAC* factors provide "useful guidance in assessing claims of agency delay." *In re Core Commc'ns, Inc.*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80). However, "[e]ach case must be analyzed according to its own unique circumstances," because each "will present its own slightly different set of factors to consider." *Air Line Pilots Ass'n v. Civ. Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984). The first and fourth factors are most important in the visa context. *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023). Weighing the *TRAC* factors here, the court concludes that Ms. Al Saedi has failed to state a claim on which relief can be granted.

The first two factors—requiring agencies to follow "a rule of reason" that justifies their timeline and consider any congressionally imposed timelines—are typically analyzed together. *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020). In essence, these two factors require the court to consider "whether 'there [is] any rhyme or reason—congressionally prescribed or otherwise—for [the] agency's delay.'" *Rashidian*, 2024 WL 1076810, at *6 (alterations in original) (quoting *Khazaei*, 2023 WL 6065095, at *6). In analyzing these factors, the court may consider the "complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Da Costa*, 80 F.4th at 340 (quoting *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1102). Both factors favor Defendants.

Ms. Al Saedi suggests that the delay in the adjudication of her application contravenes the congressionally "contemplated [] statutory timeframe within which immigration benefits [must] be adjudicated." ECF No. 8, at 24. The relevant section of the INA provides that "[i]t is the sense of the Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). However, as Ms. Al Saedi admits, *see* ECF No. 8, at 24, this guidance is not binding, and therefore cannot be considered to set forth a congressionally imposed deadline, *see Da Costa*, 80 F.4th at 344 (describing Section 1571(b) as an "aspirational statement").

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. 20-CV-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). While "[n]o bright lines have been drawn in this context . . . '[d]istrict courts have generally found that immigration delays . . . between three to five years are often not unreasonable.'" *Arab*, 600 F. Supp. 3d at 70 (quoting *Sarlak*, 2020 WL 3082018, at *6). The D.C. Circuit has concluded that a four-year delay is not unreasonable. *Da Costa*, 80 F.4th at 342. The court is satisfied that

9

Defendants utilize a rule of reason that does not constitute unreasonable delay.  At the time of this decision, Ms. Al Saedi's application has been in administrative processing for twenty-eight months.[7]  Although such a timeline is undoubtedly frustrating, it does not constitute unreasonable delay when compared to relevant cases.

The fourth *TRAC* factor, which is "the effect of expediting delayed action on agency activities of a higher or competing priority," is particularly important in the visa context and also favors Defendants.  *Da Costa*, 80 F.4th at 343 (quoting *TRAC*, 750 F.2d at 80).  The D.C. Circuit has "refused to grant relief . . . where 'a judicial order putting [the plaintiff] at the head of the queue [would] simply move[] all others back one space and produce[] no net gain.'"  *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)).  Such would be the case here, where moving Ms. Al Saedi to the front of the visa-adjudication queue would merely reorder all applicants with no change in the overall timeline.

Ms. Al Saedi counters that Defendants have failed to establish that a queue exists and contends that, even if one does, she "should not be penalized for a lack of agency resources" in processing applications.  ECF No. 8, at 27-28.  "Th[ese] assertion[s], however, do[] not grapple with the fact that [Ms. Al Saedi's] request here boils down to a request that [she] 'should be prioritized for processing ahead of others.'"  *Augustin v. Blinken*, No. 23-CV-76, 2023 WL 4547993, at *6 (D.D.C. July 14, 2023) (quoting *Milligan v. Blinken*, No. 20-CV-2631, 2021 WL 3931880, at *9 (D.D.C. Sept. 2, 2021)).  To be sure, this delay is troubling and affects

---

[7] Courts generally measure the delay from the date of the last governmental action.  *See, e.g.*, *Sereshti v. Gaudiosi*, No. 24-CV-1288, 2024 WL 4625802, at *9 (D.D.C. Oct 30, 2024); *Janay v. Blinken*, No. 23-CV-3737, 2024 WL 3432379, at *11 (D.D.C. July 16, 2024).  Here, that is October 2022, when Ms. Al Saedi was informed that her application was in administrative processing. ECF No. 1 ¶ 20.  While Ms. Al Saedi mentions that her initial Form I-130 was filed with USCIS in 2019, ECF No. 8, at 8, she does not argue that the court should measure the delay from then instead of from October 2022.

10

Ms. Al Saedi and her family. *See* ECF No. 1 ¶¶ 7-10; ECF No. 8, at 26-27. But compelling Defendants to process Ms. Al Saedi's visa application presents an individualized solution to a systemic problem and "would presumably delay other adjudications." *Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017)). Additionally, "deference must be given to the State Department's priority-setting and resource-allocation decisions" in the visa-adjudication context. *Arab*, 600 F. Supp. 3d at 71. It would be improper for the court to intervene and expedite Ms. Al Saedi's visa application at the expense of others. The fourth factor thus heavily weighs in favor of Defendants.

The third and fifth factors concern the impacts of the delay on Ms. Al Saedi. The third factor identifies "whether 'human health and welfare are at stake'—in which case judicial intervention is more justified—and the fifth assesses the 'nature and extent of the interests prejudiced by delay.'" *Milligan*, 502 F. Supp. 3d at 319 (quoting *TRAC*, 750 F.2d at 80). These factors weigh in Ms. Al Saedi's favor. Ms. Al Saedi has alleged significant costs, including "emotional hardship" due to her prolonged inability to visit her family, caretaking challenges given her inability to attend to her disabled son and grandchild, and financial hardship given her daughter's inability to work full-time due to her own caretaking responsibilities. ECF No. 1 ¶¶ 8-10. But while these factors weigh in Ms. Al Saedi's favor, they are not presently enough to overcome Defendants' advantage on the more important factors. *Cf. Ahmed v. Blinken*, No. 24-CV-153, 2024 WL 4903771 (D.D.C. Nov. 27, 2024) (finding that the balance of the *TRAC* factors favored the plaintiff where she alleged familial hardships and a five-year delay from the last governmental action on her visa application).

Finally, the sixth *TRAC* factor concerns "whether the agency's bad faith caused the delay." *Sawahreh v. Dep't of State*, 630 F. Supp. 3d 155, 164 (D.D.C. 2022). Ms. Al Saedi does not allege that Defendants have acted with impropriety. ECF No. 8, at 29. Thus, this factor is neutral.

\* \* \* \*

As the D.C. Circuit explained in *Da Costa*, the delays in visa adjudications are "troubling." 80 F.4th at 344. The costs of this delay have been undoubtedly difficult for Ms. Al Saedi and her family. But after weighing the *TRAC* factors, the court concludes that Ms. Al Saedi has not plausibly alleged that the delay in her visa adjudication is unreasonable. Accordingly, the court will dismiss the complaint.

## IV.   CONCLUSION

For the foregoing reasons, the court will grant Defendants' motion to dismiss, ECF No. 5. A separate order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date: February 13, 2025